UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR GARCIA LOPEZ,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. EDCV 15-01808-KES<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Oscar Garcia Lopez ("Plaintiff") appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the ALJ's decision is AFFIRMED.

## I.
## BACKGROUND

Plaintiff applied for DIB and SSI on March 4, 2013, alleging the onset of disability on December 1, 2007, when he was 31 years old. Administrative

Record ("AR") 194-99, 200-06. He later withdrew his SSI claim and alleged the application filing date as the date of onset. AR 30.

On January 29, 2015, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified. AR 27-58. On March 13, 2015, the ALJ issued a written decision denying Plaintiff's request for benefits. AR 7-26.

The ALJ found that Plaintiff had the severe impairments of "obesity, depression, diabetes, and right knee degenerative disc disease." AR 13. The ALJ did not find that Plaintiff has any severe mental impairments other than depression. Id. Although Plaintiff alleged a traumatic brain injury from falling of his bicycle as a child, the ALJ found the record devoid of any evidence concerning that injury, such that it was not a "medically determinable impairment." Id. At the hearing, Plaintiff's lawyer agreed that there was no evidence of a brain injury in the record. AR 44.

The ALJ also found that Plaintiff "does not have a medically determinable organic brain disorder, intellectual disability, borderline intellectual functioning ("BIF") disorder, or other cognitive disorder ...." AR 13. The ALJ acknowledged that while Drs. Unwalla and Larson had diagnosed Plaintiff with BIF and cognitive disorder, the ALJ found those diagnoses unreliable to the extent they were based on Plaintiff's self-reported symptoms and tests administered by the doctors, because Plaintiff "is not a reliable historian or test taker." Id. The ALJ based this conclusion on Plaintiff's "numerous inconsistent statements and poor work history." Id. The ALJ discussed Plaintiff's work history and inconsistent statements later in his opinion, as well as at the hearing. AR 17-18, 42-44.

Notwithstanding his impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work. AR 15-16. In addition to exertional limitations, the ALJ determined

that Plaintiff is "capable of semi-skilled work that can be learned through demonstration; and no fast-paced work." AR 16. The ALJ based this determination on the fact that Plaintiff admitted he had previously performed semi-skilled work as a machine operator and that he learned that work through direct demonstration. AR 31-32, 41-42.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff would be able to perform the unskilled jobs of electronics worker, shoe packer, and sewing machine operator. AR 22. The ALJ therefore concluded that Plaintiff is not disabled. Id.

## II.
## ISSUES PRESENTED

Plaintiff raises only one issue: whether the ALJ properly considered the opinions of two examining doctors, Khushro Unwalla, M.D. (a psychiatrist) and Douglas W. Larson, Ph.D. (a psychologist), concerning the disabling effects of Plaintiff's mental impairments. See Dkt. 31, Joint Stipulation ("JS") at 4.

## III.
## DISCUSSION

**A.  Applicable Law.**

In determining a claimant's RFC, the ALJ must consider limitations imposed by all of the claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, 1996 SSR LEXIS 5. However, if a claimant makes "no allegation of a physical or mental limitation or restriction of a specific functional capacity, and [there is] no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." Id. at *8.

In determining the limitations imposed by a claimant's impairments, the ALJ must consider the medical evidence and resolve conflicts. If the record contains evidence "susceptible to more than one rational interpretation, we must uphold the [Commissioner's] findings if they are supported by inferences reasonably drawn from the record." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

In deciding how to resolve conflicts between medical opinions, the ALJ must consider that there are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. See 20 C.F.R. §§ 404.1527(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended on April 9, 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. Thus, the ALJ must give "specific and legitimate" reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); Lester, 81 F.3d at 830-31 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).

If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d 821, 830 (9th Cir. 1996) (citing Baxter v. Sullivan, 923 F.23d 1391, 1396 (9th Cir. 1991)). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149

(9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Orn, 495 F.3d at 631; see also 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii).

In determining a claimant's RFC, the ALJ should consider those limitations for which there is support in the record, but need not consider properly rejected evidence. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to incorporate evidence from the opinions of Batson's treating physicians, which were permissibly discounted.").

**B.    The ALJ Gave Specific and Legitimate Reasons for Discounting Dr. Unwalla's and Dr. Larson's Opinions.**

**1.    Summary of Dr. Unwalla's opinions.**

Dr. Unwalla conducted a psychiatric examination of Plaintiff on May 18, 2013. AR 392-98. Dr. Unwalla took a medical history and performed a mental status examination. AR 392-94. Plaintiff reported to Dr. Unwalla that he was "kicked out of school" due to behavioral problems in the eighth grade and never learned to read or write. AR 392. Plaintiff further reported that he lived with his parents and his three children. Id. Dr. Unwalla noted that Plaintiff drove himself to the appointment. Id. He also observed that Plaintiff was appropriately dressed and groomed. Id. He was superficially cooperative and engaged, but Dr. Unwalla had to repeat questions several times before Plaintiff understood them. AR 392, 394.

Upon administering a mental status exam, Dr. Unwalla observed that Plaintiff had "some thought blocking," "poverty of thought content," could not do serial threes, had "poor" insight and judgment, and a "poor" fund of knowledge. AR 394. He also noted slowed and soft speech, blunted affect, and diminished concentration. Id. Dr. Unwalla stated that Plaintiff "appeared to have poor intellectual functioning." AR 395. Dr. Unwalla diagnosed Plaintiff as suffering from borderline intellectual functioning with a Global Adult Function ("GAF") score of 59.[1] Id.

Dr. Unwalla noted "no specific mental health issues except intellectual deficits." Id. Based on these deficits, he opined that Plaintiff had only mild difficulty in maintaining composure and even temperament. Id. He concluded, however, that Plaintiff had moderate difficulties in most other areas of functioning, as follows:

> [The claimant] has moderate difficulties in maintaining social functioning. He has moderate difficulties focusing and maintaining attention. He has moderate difficulties in concentration, persistence, and pace. The level of personal independence is adequate. He is intellectually and psychologically

---

[1] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM") (4th ed. 2000), p. 34 (describing the GAF scale of 1-100 and noting that a score between 51-60 indicates moderate difficulties, whereas a score between 61-70 indicates a patient with "some mild symptoms" but who is "generally functioning pretty well, [and] has some meaningful interpersonal relationships." GAF scores reflect a clinician's "rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Vargas v. Lambert, 159 F.3d 1161, 1164 n. 2 (9th Cir.1998). The most recent edition of the DSM "dropped" the GAF scale, citing its "lack of conceptual clarity and questionable psychological measurements in practice." Curtin v. Colvin, 2016 U.S. Dist. LEXIS 61973, at *10-11 n. 2 (C.D. Cal. May 9, 2016), citing DSM (5th ed. 2012).

> capable of performing activities of daily living (ADLs).
>
> Based on the objective findings presented during this interview, the claimant would have moderate limitations performing simple and repetitive tasks and moderate limitations performing detailed and complex tasks.  The claimant would have moderate difficulties to be able to perform work activities on a consistent basis without special or additional supervision.  The claimant would have moderate limitations completing a normal workday or work week due to their mental condition.  The claimant would have moderate limitations accepting instructions from supervisor and interacting with coworkers and with the public.  He would have moderate difficulties to be able to handle the usual stresses, changes and demands of gainful employment.

AR 395.

### 2. Summary of Dr. Larson's opinions.

Dr. Larson conducted a psychological examination on June 27, 2013. AR 399-407.  Dr. Larson took a medical history, performed a mental status examination, and conducted several memory and intelligence tests.  AR 399-403.  Dr. Larson described Plaintiff as "generally pleasant and cooperative" but "slow."  AR 401.  Dr. Larson noted "somewhat slowed" speech, "somewhat impaired" thought process, mild poverty of thought content, "reduced" memory and concentration, and "limited" insight and judgment. Id.  Dr. Larson diagnosed cognitive disorder and mood disorder.  AR 403.

Plaintiff reported to Dr. Larson that he had a driver's license, but had not driven in three months.[2]  AR 399.  Dr. Larson opined that Plaintiff's

---

[2] In contrast, Plaintiff told Dr. Unwalla that he drove himself to that appointment about one month earlier, on May 18, 2013.  AR 392.

cognitive problems did not impair his ability to do chores, yard work, cooking shopping, and running errands. AR 400. At the same time, he noted that Plaintiff "does not do any chores." AR 401. Instead, he "get up, watches some TV, eats and sleeps." Id. Ultimately, Dr. Larson provided the following functional assessment of Plaintiff:

> 1. **Not** impaired in the ability to understand, remember, and complete simple commands.
>
> 2. **Markedly** impaired in the ability to do understand, remember, and complete complex commands.
>
> 3. **Moderately** impaired in the ability to interact appropriately with supervisors, co-workers or the public.
>
> 4. **Moderately** impaired in the ability to comply with job rules such as safety and attendance.
>
> 5. **Moderately** impaired in the ability to respond to change in the normal workplace setting.
>
> 6. **Moderately** impaired in the ability to maintain persistence and pace in a normal workplace setting.

AR 403.

### 3. The ALJ's Reasons for Discounting these Opinions.

The ALJ agreed that Plaintiff has "moderate" impairments with regard to concentration, persistence, and pace. AR 15. The ALJ, however, found that Plaintiff's limitations in the areas of daily living and social functioning were only "mild." AR 14. With regard to his activities of daily living, the ALJ cited the fact that Plaintiff was "able to do his own grocery shopping without assistance" citing Ex. 2F p. 83[3] [AR 359], took his children to school, citing

---

[3] This exhibit is a Kaiser treatment note for knee pain dated March 12, 2013, in which Plaintiff reported that he "uses no aids, able to do shopping

Ex. 8F[4], and attended church "once a week," citing Ex. 6E[5] [AR 257]. AR 14. The ALJ reasoned that he had adequately accounted for Plaintiff's difficulties in maintaining concentration, persistence, and pace by limiting Plaintiff to work that can be learned through demonstration and that is not fast-paced. AR 18.

The ALJ expressly found a "lack of evidence" that Plaintiff's depression more than mildly impairs his social functioning. AR 20. The ALJ cited the fact that Plaintiff reported his family relationships as "good"[6] (AR 19) and was able to talk on the phone with others and attend church (AR 14). The ALJ

---

without assistance and is able to walk unlimited distance." AR 359. In contrast, in his Adult Function Report dated September 11, 2013, Plaintiff said that he does no shopping and can only walk 100 feet. AR 256, 258.

[4] This exhibit is a 214-page collection of Kaiser records. AR 1007-1220. The ALJ did not provide a pin cite, and this Court does not see a reference in Exhibit 8F to Plaintiff taking his children to school. In Exhibit 7F, Kaiser noted that Plaintiff reported "he does wake up early to get his children ready for school." AR 1004. In his Adult Function Report, Plaintiff said that his mother, Adela Garcia, takes his children "to and from school." AR 254. At the hearing, he testified that he was "more or less" able to care for his children, but his parents helped with "getting them ready for school, taking them to school, [and] making dinner for them." AR 33-34.

[5] Concerning church attendance, Plaintiff's Adult Function Report says that he goes "once in a while … when feeling good …." AR 257. At the hearing in January 2015, he testified that he typically leaves the house only once or twice a week to go to medical appointments. AR 46-47. With regard to church, he testified that he "was going for a while" but then it got "hard going up and down, up and down, to all their events." AR 48.

[6] Plaintiff told Dr. Unwalla that his relationship with his family was "good." AR 394. Plaintiff told Dr. Larson that his relationship with his family was "fair." AR 401. In his Adult Function Report, Plaintiff said he had problems getting along with his family, but he got along "well" with authority figures. AR 258-59.

also found that Plaintiff's depression was not disabling, because Plaintiff did not exhibit symptoms any more severe than a "depressed mood" and he never received treatment. AR 18, citing AR 426 (recommending that Plaintiff "self refer" for mental health treatment, with no record he ever did) and AR 391 (explaining Plaintiff participated in court-ordered "family counselling and parenting classes to address issues with his daughter"). For these reasons, the ALJ expressly declined to restrict Plaintiff to jobs that would limit his contact with the public. AR 20.

In discussing Dr. Unwalla's opinions, the ALJ noted that they were based, in part, on limitations reported by Plaintiff which the ALJ found not credible due to inconsistencies. For example, Dr. Unwalla noted that Plaintiff never learned to read, yet Plaintiff testified at the hearing that he had passed the written driver's license test and could "more or less" read. AR 19, citing AR 34, 392. When the ALJ asked if he could read instructions "on the side of a box on how to prepare something in a microwave," Plaintiff answered, "No – maybe, yes." AR 34. Dr. Unwalla noted that Plaintiff said he does not do any shopping, but Plaintiff told his Kaiser doctors that he could "do shopping without assistance." AR 19, citing AR 359, 393.

The ALJ also reasoned that Dr. Unwalla's findings were not corroborated by objective evidence outside of the tests he administered which could be manipulated by Plaintiff. AR 19, 20. The ALJ concluded that Plaintiff had likely manipulated the test results for a number of reasons. First, the ALJ cited inconsistencies in Plaintiff's statements concerning the severity of his impairments. AR 17. Second, the ALJ cited the fact that Plaintiff had performed semi-skilled work in the past, which is inconsistent with him suffering from disabling cognitive impairments. AR 19, citing Plaintiff's hearing testimony at AR 39-42. Third, the ALJ cited Plaintiff's "poor work history," suggesting that Plaintiff was capable of working but unmotivated to

maintain employment. Id., citing AR 212-15 (listing short periods of employment at Wal-Mart, Rancho Ready Mix, Dan Copp Crushing, RemedyTemp, California Auto Dealers Exchange, Target, Boston Market, and other businesses). Fourth, the ALJ cited Plaintiff's history of arrests. AR 19, citing AR 400 (Plaintiff told Dr. Larson he was "arrested three time for graffiti charges" and spent "three days in jail" and also "had a gun charge" when he was 18 years old.[7]).

The ALJ discounted Dr. Larson's opinions for the same reasons that he discounted Dr. Unwalla's opinions. AR 20. The ALJ repeated that Plaintiff "is not a reliable historian or test taker." Id.

### 4. Summary of Plaintiff's Arguments.

First, Plaintiff focuses on the opinion of Dr. Unwalla that Plaintiff would have "moderate limitations completing a normal workday or workweek due to [his] mental condition" and the opinion of Dr. Larson that Plaintiff is moderately impaired "in the ability to comply with job rules such as safety and attendance." JS at 8, citing AR 395, 403. Plaintiff argues that the "ability to maintain work activity on a consistent basis without excessive absenteeism is the hallmark of substantial gainful work activity," and the ALJ did not give sufficient reasons for discounting the attendance-related opinions of Drs. Unwalla or Larson. Id.

---

[7] Plaintiff told Dr. Unwalla he had been arrested and jailed twice, last released in 1998. AR 393. At the hearing, Plaintiff testified that he was arrested once for possession of burglary tools and once for shooting a gun in the air. AR 49. He testified that the gun incident happened "in the last 10 years" (i.e., since 2005, when he was about 28, not 18). Id. He also said that he went to jail once after being pulled over while driving, because he "had a warrant or something for a ticket." AR 50. He estimated he had been arrested "maybe three" times. Id. He testified that his job at Tree Island Wire in 2000 had been "right after his probation." AR 52, 221.

Second, Plaintiff argues that the ALJ did not adequately account for Plaintiff's moderate difficulties with concentration, persistence, and pace. Plaintiff contends that someone with moderate difficulties in this area will need regular reminders to stay on task. JS at 8-9. During the hearing, the ALJ asked the VE whether a hypothetical worker with Plaintiff's RFC who also needed "regular reminders on how to perform their job and reminders to stay on task" would be able to perform the jobs of electronics worker, shoe packer, and sewing machine operator. AR 57. The VE responded that he would not. Id.

Third, Plaintiff argues that the ALJ may not discount the opinions of mental health professionals for the same reasons that the ALJ discounted Plaintiff's testimony concerning the severity of his symptoms (i.e., that Plaintiff is not a reliable historian or test taker). According to Plaintiff, if Drs. Unwalla and Larson deemed Plaintiff's answers to mental status exam questions sufficiently reliable to provide a basis for their opinions, then the ALJ cannot second-guess those answers. JS at 10, citing Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1199-1200 (9th Cir. 2007) for the premise that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." At the hearing, when Plaintiff's attorney suggested that Plaintiff's cognitive scores were so low that he met a listed impairment, the ALJ responded, "I would agree if those test scores are valid. I think tests can be manipulated and especially psychological examinations. A person can give a poor effort and manipulate the test simply." AR 43.

5. **Summary of Respondent Arguments.**

Respondent argues that the ALJ's failure to credit some of the "moderate" limitations found by Drs. Larson and Unwalla is, at worst,

harmless error. JS at 16. Respondent points out that mental impairments causing only moderate limitations in the ability to maintain regular attendance and stay on-task while at work need not be accommodated through limitations in the RFC. Id., citing Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007). In Hoopai, the claimant argued that his depression, found "severe" at step two, needed to be accounted for in his RFC. The Ninth Circuit upheld the ALJ's determination that "Hoopai's depression was not sufficiently severe such that it significantly affects his ability to work beyond the exertional limitations." Id. at 1076. There was substantial evidence in the record to support the ALJ's determination, including two psychological evaluations that diagnosed Hoopai with only "moderately significant forms of depression." Id. A third doctorfound Hoopai to be moderately limited in "his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Id. at 1077. In response, the Ninth Circuit stated, "We have not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation." Id. The Ninth Circuit affirmed the ALJ's RFC determination which contained only exertional limitations. Id.

**6. Analysis.**

    a.    The ALJ gave specific and legitimate reasons for discounting the opinions of Drs. Unwalla and Larson.

First, the ALJ properly discounted the opinions of Drs. Unwalla and Larson as inconsistent with Plaintiff's known history of performing semi-skilled work. Plaintiff testified that he was a "machine operator" for Tree Island Wire. AR 31. He operated a machine that fabricated "the wire that

goes outside of a house before … the stucco." Id.  He held that job for eight months, including one month of training when someone showed him how to run the machine.  AR 32.  He was let go when he could not keep up with the quantity of output demanded, because standing all day was "too hard" for him.  AR 39-41.

The VE testified that this was semi-skilled work with a reasoning level of 3.  AR 41.  The Dictionary of Occupational Titles ("DOT") specifies the "reasoning level" required for each listed job using six defined levels.  Reasoning Level 1 requires the ability to "carry out simple one- or two-step instructions," whereas Reasoning Level 6 requires the application of "principles of logical or scientific thinking to a wide range of intellectual and practical problems."  Id.  In between these two extremes, Reasoning Level 2 requires the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations."  Id.  In contrast, Reasoning Level 3 requires slightly higher reasoning abilities, as follows: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form.  Deal with problems involving several concrete variables in or from standardized situations."  Id.

Dr. Unwalla's opinion that Plaintiff suffers from "borderline intellectual functioning" and would have moderate difficulty performing even simple, repetitive tasks (AR 395) is inconsistent with Plaintiff's history of working a job requiring Reasoning Level 3 and only leaving that job when its exertional demands (i.e., standing all day) diminished his output, causing his employer to let him go.  So too Dr. Larson's opinions that Plaintiff is "moderately" impaired in interacting with others, complying with job site rules, and responding to changes in a "normal" workplace setting (AR 403) are inconsistent with Plaintiff's having worked as a machine operator for eight

months until the job's exertional demands became too difficult. Thus, the inconsistency identified by the ALJ is supported by substantial evidence in the record. See Hall v. Barnhart, 210 F. App'x 705, 706 (9th Cir. 2006) (holding ALJ properly discounted doctor's opinion that claimant could not "fulfill the basic requirements of any job" when that opinion was inconsistent with the fact that claimant worked at Sears for "seven years and his condition has not materially changed since that time").

Second, an ALJ may discount medical opinions that rely on the claimant's subjective complaints where the ALJ has properly discounted the claimant's credibility. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Similarly, "an ALJ may discount an opinion based on tests within the claimant's control and subject to manipulation…." Sutliff v. Colvin, 2016 U.S. Dist. LEXIS 7884, at *13 n. 7 (C.D. Cal. Jan. 22, 2016), citing Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005). Thus, the ALJ's findings that Plaintiff was an unreliable historian and test taker were both adequate reasons to discount the opinions of Drs. Unwalla and Larson.

The ALJ's determination that Plaintiff was unreliable was, in turn, supported by substantial evidence in the record. As noted above, Plaintiff made inconsistent statements about his ability to shop unassisted (cf., AR 359 and 256), his ability to read (cf., AR 34 and 392), driving (cf., AR 392 and 399), and his criminal history (see n. 7, supra).[8] Thus, this second reason was

---

[8] Plaintiff relies on Ryan, 528 F.3d at 1199-1200, to assert that an ALJ cannot reject an examining physician's opinion by questioning the credibility of the patient's complaints. JS at 10. This case is distinguishable from Ryan because the ALJ here relied explicitly upon substantial, objective evidence of Plaintiff's lack of credibility as a basis for rejecting the opinions of Drs. Unwalla and Larson. See Calkins v. Astrue, 384 Fed. App'x 613, 615 (2010). Like in Calkins, it appears that in formulating their opinions, both Drs. Unwalla and Larson relied heavily on Plaintiff's subjective reporting.

also supported by substantial evidence in the record.

Third, the ALJ rejected the opinions of Dr. Unwalla and Larson that Plaintiff has "moderate" difficulty interacting with others based on "lack of evidence." AR 20. Indeed, the record shows that Plaintiff reported (1) his family relationships were "good" (AR 394), (2) he got along "well" with authority figures (AR 258-59), (3) he sometimes attended church (AR 48, 257), and (4) he never received treatment for depression, social anxiety, or any similar mental disorder that would impair his social interactions (AR 391, 426). Thus, the ALJ properly concluded that the opinions of Drs. Unwalla and Larson concerning Plaintiff's social functioning were inconsistent with the record as a whole.

### b. Any error was harmless.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate non-disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

Here, the ALJ accounted for Plaintiff's moderate difficulties in

---

Plaintiff's medical health history was obtained entirely through Plaintiff's reporting, as neither doctor reviewed Plaintiff's medical records. Additionally, it appears unlikely that the doctors' diagnoses were based primarily on the "relatively superficial" testing they administered Plaintiff during their consultations. See id. Just as an ALJ properly may discount a doctor's opinion that is *solely* based on an non-credible plaintiff's reporting, see Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009), "[a]n ALJ must be permitted to discount an opinion based *principally* upon a [plaintiff's] self-reporting if the record contains objective evidence that the self-reporting is not credible." Calkins, 38 Fed. App'x at 615.

maintaining concentration, persistence, and pace by limiting him to jobs that do not require fast-paced work and that can be learned by demonstration. The ALJ properly discredited the opinions of Drs. Unwalla and Larson that Plaintiff has moderate difficulty in the area of social functioning. The other "moderate" limitations found by Drs. Unwalla and Larson (i.e., moderate difficulties with attendance, completing a normal workday, working without special supervision, and responding to change) are comparable to the limitations discussed in <u>Hoopai</u> which did not warrant any non-exertional limitations in the RFC.

## IV.
## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

Dated: <u>December 29, 2016</u>

*/s/ Karen E. Scott*
_____
KAREN E. SCOTT
United States Magistrate Judge

17